LAW OFFICES OF TODD B. SEROTA
TODD B. SEROTA, State Bar No. 109875
Email: tserota@alum.mit.edu
1601 N. Sepulveda Blvd., #793
Manhattan Beach, California 90266
Telephone: (310) 798-2004
Facsimile: (310) 798-7273

Attorneys for Plaintiffs The Newport Brain
Research Laboratory, Inc. and NBRL V

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE NEWPORT BRAIN RESEARCH LABORATORY, INC., a California Corporation, and NBRL V, a Nevada Limited Liability Corporation | Case No. 8:18-CV-1625 |
| Plaintiff, | |
| v. | |
| KEVIN MURPHY, an Individual; and DOES 1 through 10 | **COMPLAINT FOR:** |
| Defendants. | 1) **FEDERAL UNFAIR COMPETITION (LANHAM ACT)** |
| | 2) **COPYRIGHT INFRINGMENT;** |
| | 3) **BREACH OF CONTRACT;** |
| | 4) **THEFT OF TRADE SECRETS** |
| | 5) **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;** |
| | 6) **STATE LAW UNFAIR COMPETITION** |
| | 7) **FRAUD AND DECEIT;** |
| | 8) **SLANDER; AND** |
| | 9) **BREACH OF FIDUCIARY DUTY** |
| | **DEMAND FOR JURY TRIAL** |

Complaint For 1) Federal Unfair Competition (Lanham Act); 2) Copyright Infringement; 3) Breach of Contract; 4) Theft Of Trade Secrets; 5) Interference With Prospective Economic Advantage; 6) Unfair Competition; 7) Fraud and Deceit; 8) Slander Per Se; and 9) Breach of Fiduciary Duty

**INTRODUCTION**

This is an action for Federal unfair competition (Lanham Act), copyright infringement, breach of contract, theft of trade secrets, tortious interference with prospective economic advantage, unfair competition and slander brought by The Newport Brain Research Laboratory, Inc. ("NBRL") against Defendant Kevin Murphy ("Defendant") and Does 1 through 10 seeking damages and injunctive relief, for breach of fiduciary duty brought by NBRL V against Defendant seeking damages and injunctive relief (collectively "Plaintiffs") and for fraud and deceit by Plaintiffs against Defendant seeking damages and injunctive relief.

Plaintiffs for their complaint allege, upon personal knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters, as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over NBRL's Lanham Act claim under 28 U.S.C. §§ 1331 and 1338(b) in that the claim is for Federal unfair competition and is joined with a copyright infringement claim, and over NBRL's copyright infringement claim under 28 U.S.C. §§1331 and 1338(a) in that the complaint arises under the copyright laws of the United States, 17 U.S.C. §§ 101 et seq.  This Court has jurisdiction over all of Plaintiffs' supplemental claims in accordance with the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) because these claims are so related to NBRL's claims under Federal Law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

2.      This Court has personal jurisdiction over Defendant.  Defendant lives in California, solicits, transacts and is doing business within the state of California and has committed unlawful and tortious acts within the state of California.

Complaint For 1) Federal Unfair Competition (Lanham Act); 2) Copyright Infringement; 3) Breach of Contract; 4) Theft Of Trade Secrets; 5) Interference With Prospective Economic Advantage; 6) Unfair Competition; 7) Fraud and Deceit; 8) Slander Per Se; and 9) Breach of Fiduciary Duty

1  Plaintiffs' claims arise out of the conduct that gives rise to personal jurisdiction

2  over Defendant.

3       3.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) in

4  that a substantial part of the events or omissions giving rise to these claims

5  occurred in this judicial district and a substantial part of the property that is the

6  subject of this action is located in this judicial district.  Further, under the venue

7  provision in a contract executed with NBRL by Defendant, one of only two

8  appropriate venues is specified to be Federal court in Los Angeles, CA, making

9  this the only court in which the action can be brought.

## THE PARTIES

4.    Plaintiff NBRL is a corporation organized under the laws of

California with its principal place of business located in this judicial district at

1601 Dove St., Suite 299, Newport Beach, CA 92660.

5.    Plaintiff NBRL V is a limited liability corporation organized under the

laws of Nevada with its principal place of business located in this judicial district

at 1601 Dove St., Suite 299, Newport Beach, CA 92660.

6.    On information and belief, Defendant Kevin Murphy

("DEFENDANT") is an individual who resides at 14860 Encendido, San Diego,

CA 92127.

7.    The true names and/or capacities, whether individual, corporate,

associate or otherwise, of Defendants named herein as Does 1 through 10,

inclusive are unknown to Plaintiffs, which therefore sues said Defendants by said

fictitious names, and Plaintiffs will amend this complaint to show their true names

and capacities when the same have been ascertained.  Plaintiffs are informed and

believe, and on that basis allege, that each of said Defendants designated herein as

Doe participated with one or more of the other Defendants named herein to commit

the acts alleged herein, and as a result, has caused damage to Plaintiffs.  Where

Complaint For 1) Federal Unfair Competition (Lanham Act); 2) Copyright Infringement; 3) Breach of Contract; 4) Theft
Of Trade Secrets; 5) Interference With Prospective Economic Advantage; 6) Unfair Competition; 7) Fraud and Deceit; 8)
Slander Per Se; and 9) Breach of Fiduciary Duty

applicable, the term "Defendant" shall be deemed to include appropriate Doe Defendants.

## **BACKGROUND FACTS**

8.      NBRL is a company that possesses revolutionary, proprietary, trade secret Magnetic EEG/ECG-guided Resonance Therapy technology that it calls MeRT to treat a variety of brain maladies including depression, which is an FDA approved indication, as well as other indications off-label such as Autism Spectrum Disorder (ASD),  Post Traumatic Stress Disorder, (PTSD), Traumatic Brain Injury (TBI),  and chemo brain.  MeRT involves applying Transcranial Magnetic Stimulation ("TMS"), which is magnetic energy, to the brain non-invasively through the skull.  Biometric data is first acquired and analyzed using NBRL's proprietary technology.  Using the results of that analysis, TMS is then applied to the patient's brain using a proprietary, trade secret treatment protocol that is specifically tailored to each patient (the frequency and strength of the magnetic energy, the location on the patient's skull and the duration and pattern of the magnetic energy).

9.      NBRL's MeRT technology is used under license by physicians to treat patients at its Newport Beach facility (under the dba Brain Treatment Center ("BTC")) and at other locations in the United States.  NBRL also works with the military and the Veterans Administration (VA) to treat current military personnel and war veterans who are suffering from PTSD and TBI.

10.     Defendant is a medical doctor specializing in radiation oncology and a professor at the University of California at San Diego ("UCSD").  On September 30 of 2013, Defendant came to NBRL's facility to explore the possibility of having BTC treat a patient.  On information and belief, prior to meeting with NBRL, Defendant had virtually no familiarity with TMS, and specifically its use to treat ASD, PTSD, TBI and other brain maladies.  Moreover, Defendant had no

knowledge whatsoever about MeRT.  After learning about TMS from NBRL, Defendant signed the patient up for treatment that same day and expressed interest in discussing the possibility of entering into a business relationship in some form with NBRL.  That same day, on September 30, 2013, Defendant signed a Non-Disclosure Agreement (NDA) with NBRL, a copy of which is attached hereto as Exhibit 1.  In the NDA, Defendant agreed, amongst other things, not to use any of NBRL's proprietary information for any purpose other than considering entering into a business relationship with NBRL.

11.    The patient's treatments began in the first week of October, 2013 and continued through December, 2013.  In January of 2014, Defendant and NBRL entered into a joint business relationship.  Defendant represented that UCSD was involved in the relationship, including issuing purchase orders on behalf of UCSD that had NBRL invoice UCSD for a license to NBRL's proprietary MeRT technology and equipment, and on information and belief, using funds from UCSD to pay NBRL for said license and equipment.  The equipment was set up at Pacific Oncology in Encinitas, CA so Defendant could begin treating patients suffering from chemo brain (a brain malady arising from the receipt of chemotherapy treatments) using NBRL's MeRT technology.  NBRL disclosed its trade secret MeRT technology to Defendant under the NDA, specifically how to interpret biometric electrophysiologic data and develop appropriate treatment protocols. Over the next several months Yi Jin, the primary inventor of NBRL's proprietary MeRT technology, and Alex Ring, one of NBRL's chief scientists who is responsible for reading electrophysiologic studies, made numerous trips to Defendant's facility.  During those trips, Jin and Ring disclosed NBRL's trade secret technology to Defendant under the NDA, including instructing him on how to read electrophysiologic data and subsequently develop treatment protocols for patients using NBRL's MeRT technology.  In September-October, 2014, NBRL set up Del Mar Neuro Center in the San Diego area so that Defendant could treat

patients using NBRL's MeRT technology.  As with other treatment centers, NBRL supplied all of the technology and staff while Defendant was the doctor responsible for supervising treatment of all patients, which is required for this type of medical treatment.  On information and belief, Defendant's portion of Del Mar Neuro Center was funded by Learn Capital, which later became a major investor in NBRL.

12.     Over the course of the next year and a half, from January, 2014 on, NBRL gave numerous joint presentations with Defendant and introduced Defendant to NBRL's contacts within the military, with whom NBRL had been working to treat military personnel and veterans with PTSD and TBI.  In these presentations they presented slides prepared and owned by NBRL that help to explain NBRL's technology.  For example, on May 2, 2014, NBRL and Defendant gave a joint presentation at the Pentagon about the use of MeRT to treat military personnel and veterans with PTSD and TBI.  In July, 2014, using NBRL's materials, Defendant gave a presentation about MeRT at UCSD.  In September of 2014, Yi Jin, one of the founders of NBRL and the primary scientist behind NBRL's technology, and Defendant gave a joint presentation to a charitable foundation owned by Oakley called Infinite Hero that provides financial assistance to veterans suffering from a wide variety of conditions.  In March, 2015, NBRL and Defendant gave a joint presentation at Camp Lejeune in North Carolina in which these and other NBRL slides were used.  In April, 2015, NBRL collaborated with Defendant on clinical trials at Camp Lejeune, Camp Pendleton in California and at other military hospitals.

13.     In September, 2015, NBRL and Defendant formed a Nevada LLC called NBRL V.  There were three founding members/managing member/owners - Defendant, Judy Kosterman, who has extensive connections within the military and Jon Warren, a war veteran who was successfully treated for PTSD by NBRL. The primary purpose of NBRL V was to work with the military to treat veterans.

In December, 2015, Defendant ceased all communications with NBRL and, on information and belief, started competing unfairly with NBRL through three of his own companies that he had relatively recently formed - Peak Performance (now known as Peak MD Institute), FreqLogic (now known as PeakLogic) and Medical Synchrony Centers (now known as Mindset Treatment Centers). In clear violation of the NDA, Defendant formed these companies while secretly planning to steal NBRL's trade secret technology, supplied to him under the NDA as well as NBRL's copyrighted slides after removing NBRL's BTC logo and in some cases adding his own logo. As part of his plan to usurp NBRL in this treatment space, Defendant even calls his treatment technology prTMS, which was a service mark previously used (and subsequently abandoned) by NBRL.

14.    In clear violation of the NDA, Defendant is unfairly competing with NBRL by treating patients in the public sector in San Diego using the stolen trade secret information about which he learned from NBRL under the NDA. Using the military contacts to whom he was introduced by NBRL and NBRL V and the trade secret information he learned about NBRL's MeRT technology, Defendant is unfairly competing with NBRL by treating military personnel and veterans. In May, 2017, Defendant's company PeakLogic signed a contract with Special Operations Command ("SOCOM") within the military to investigate the treatment of Special Operations Forces to improve human performance using the critical elemtents of MeRT technology that Defendant stole from NBRL which, as noted above, Defendant calls prTMS. On information and belief, Defendant has also disparaged NBRL by telling military leaders from whom both he and NBRL are trying to get business, and others, that NBRL is owned and run by "Chinese" spies and the "Chinese Mafia."

## FIRST CLAIM FOR RELIEF

### (Federal Unfair Competition Brought By NBRL)

15.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-14 of this Complaint as though fully set forth herein.

16.     As alleged above, on information and belief, Defendant has taken the critical core elements of NBRL's MeRT technology and is using them in his own treatment protocols in a way that on the surface appears to be very similar to NBRL's treatment protocols.  Indeed patients, who generally have no technical knowledge, find it extremely difficult if not impossible to discern the differences between the treatment protocols that Defendant and NBRL are using.

17.     Defendant represents in advertising that his prTMS treatments are safe, but on information and belief, Defendant's treatment protocols are in fact not safe.  For example, Defendant treated a former Navy Seal named John Surmont with Defendant's prTMS technology and caused great harm to Surmont.  Because Defendant's treatments use NBRL's core technology and on the surface are virtually indistinguishable to members of the general public, Defendant's representations that his treatments are safe, when in fact they are not, are misrepresentations that are extremely harmful to NBRL.  When the public sees that Defendant's treatments are unsafe and cause harm, they will also believe that NBRL'S treatments will cause harm, when in fact they are quite safe.

18.     On information and belief, Defendant also represents in advertising to the public and military sectors that he is the originator of his prTMS technology, when in fact he stole the critical elements of NBRL's MeRT technology, and thus his technology is totally derivative of NBRL's MeRT technology.  It is critically important that the public and military sectors understand that NBRL is an innovator in this field and originated its MeRT technology, which is unique and is an advance over all other providers who are using TMS to treat conditions such as ASD, PTSD and TBI.

Complaint For 1) Federal Unfair Competition (Lanham Act); 2) Copyright Infringement; 3) Breach of Contract; 4) Theft
Of Trade Secrets; 5) Interference With Prospective Economic Advantage; 6) Unfair Competition; 7) Fraud and Deceit; 8)
Slander Per Se; and 9) Breach of Fiduciary Duty

19.     Defendant's representations in advertising that his treatments are safe
and that he completely originated  his prTMS technology are false, in violation of §
43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  NBRL has suffered great harm
from Defendant's false representations in advertising in that the public and military
sectors will believe that NBRL's treatment protocols were not originated by NBRL
and are not safe.

20.     NBRL has suffered damages from Defendant's false representations
in advertising in an amount that will be proven at trial, but which is at least $1
million.

21.     Because of the damage to NBRL's reputation from Defendant's false
statements in advertising, Defendant cannot be fully compensated by monetary
damages and is entitled to permanent injunctive relief to prevent Defendant from
continuing his harmful conduct.

## SECOND CLAIM FOR RELIEF
### (Copyright Infringement Brought By NBRL))

22.     Plaintiff re-alleges and incorporates by reference the allegations of
Paragraphs 1-21 of this Complaint as though fully set forth herein.

23.     On September 7, 2018, NBRL filed for copyright registration
certificates with the United States Copyright Office for some of the slides it uses in
its presentations.  The first two of these works are shown in Exhibit 2 and the
second two are .avi moving image files that cannot as a practical matter be attached
to this complaint.  The first work is application number 1-6933054642, the second
work is application number 1-6933054541, the third work is application number 1-
6933054744 and the fourth work is application number 1-6933054787.

24.     NBRL is the  owner of the above-mentioned slides for which it has
applied for copyright registrations.

25.     Without authorization, Defendant copied and used each of NBRL's aforementioned copyrighted works in his presentations to compete unfairly with NBRL.  Defendant's infringing copy of NBRL's first copyrighted work (1-6933054642) is the 20th slide in a 2016 presentation given by Defendant, which is attached as Exhibit 3.  Defendant's infringing copy of NBRL's second copyrighted work (1-6933054541) is the 12th slide in Exhibit 3.  Defendant's infringing copies of NBRL's third and fourth copyrighted works (1-6933054744 and 1-6933054787) were used as part of an audio/visual presentation that Defendant gave in San Angelo, Texas in late 2017 or early 2018 and can be seen at the 37:25 to 37:30 point in that presentation.

26.     NBRL has not authorized Defendant's copying and use of NBRL's copyrighted works.

27.     Defendant knew that the copyrighted works belong to NBRL and that he did not and does not have permission to copy and use them, and thus Defendant knew that his conduct constituted copyright infringement.  As such, Defendant's conduct was willful within the meaning of the Copyright Act.

28.     As a result of his wrongful conduct, Defendant is liable to NBRL for copyright infringement pursuant to 17 U.S.C. § 501.  NBRL has suffered, and has continued to suffer, substantial losses, including but not limited to profits and damage to its business reputation and goodwill.

29.     NBRL is entitled to recover damages, which include its losses and any and all profits Defendant has made as a result of his wrongful conduct pursuant to 17 U.S.C. § 504.

30.     NBRL is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

31.     NBRL is also entitled to a permanent injunction pursuant to 17 U.S.C. § 502 to enjoin Defendant from any further use of NBRL's copyrighted works.

Complaint For 1) Federal Unfair Competition (Lanham Act); 2) Copyright Infringement; 3) Breach of Contract; 4) Theft Of Trade Secrets; 5) Interference With Prospective Economic Advantage; 6) Unfair Competition; 7) Fraud and Deceit; 8) Slander Per Se; and 9) Breach of Fiduciary Duty

## THIRD CLAIM FOR RELIEF

### (Breach of Contract Brought By NBRL)

32.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-31 of this Complaint as though fully set forth herein.

33.     NBRL has done all things required of it under the NDA and is in no manner or respect in breach thereof.

34.     Defendant has breached the NDA by using and continuing to use the proprietary trade secret information concerning NBRL's MeRT technology supplied to him under the NDA to start his own businesses and compete with NBRL, in both the public and military sectors.  Defendant's prMRT technology is based on critical elements of NBRL's trade secret MeRT technology that was revealed to him under the NDA.

35.     As a direct and proximate result of Defendant's breach, NBRL has suffered and will suffer substantial monetary damage in a sum not presently susceptible to calculation, but which will be proved at trial and which is believed to be at least $1 million.

36.     The NDA provides for injunctive relief in the case of breach.  NBRL is therefore entitled to a permanent injunction that prevents Defendant from continuing to use all information provided to him under the NDA and forces Defendant to return all such information, including all copies and written references thereto, to NBRL.

## FOURTH CLAIM FOR RELIEF

### (Theft Of Trade Secrets Brought By NBRL)

37.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-36 of this Complaint as though fully set forth herein.

38.     NBRL's TMS treatment technology known as MeRT is unique in that it involves taking and reading the biometric data of a patient and developing a

Complaint For 1) Federal Unfair Competition (Lanham Act); 2) Copyright Infringement; 3) Breach of Contract; 4) Theft
Of Trade Secrets; 5) Interference With Prospective Economic Advantage; 6) Unfair Competition; 7) Fraud and Deceit; 8)
Slander Per Se; and 9) Breach of Fiduciary Duty

treatment protocol based on the results using proprietary technology.  The treatment protocol involves applying transcranial magnetic stimulation energy non-invasively through the skull to one or more locations on a patient's brain at a particular frequency, at a particular strength, for a particular length of time in a particular pule train pattern.  The determination of all of these factors, taking into account efficacy and safety of the patient, is a valuable trade secret within the meaning of Cal. Civ. Code § 3426.1(d) belonging to NBRL.  NBRL has spent substantial monies and resources developing its trade secret technology, which provides a crucial commercial advantage in the marketplace.  NBRL's trade secret technology is of paramount importance to its business reputation and success in both the private and military sectors.  NBRL's trade secret information is not generally known in the industry and is valuable because NBRL derives economic value from the information not being publicly available.

39.    NBRL protects its trade secret information by requiring employees to keep such information confidential, by password protecting computers, by limiting access to such information and by requiring persons to whom such information needs to be disclosed for business purposes, such as Defendant, to sign NDA's.

40.    As stated above, on September 30, 2013, Defendant signed an NDA with NBRL.  NBRL provided Defendant access to its trade secrets, as stated above, under the NDA based on Defendant's representations that he was entering into a joint business relationship with NBRL.

41.    Defendant has utilized NBRL's trade secrets in formulating his prTMS treatment protocols, with which he unfairly competes with NBRL in both the public and military sectors, in violation of Cal. Civ. Code § 3426 et seq.

42.    As a proximate result of Defendant's misappropriation of NBRL's trade secrets and confidential information, NBRL has suffered, and will continue to suffer, damages in an amount to be proven at trial, but which are at least $10 million.

Complaint For 1) Federal Unfair Competition (Lanham Act); 2) Copyright Infringement; 3) Breach of Contract; 4) Theft Of Trade Secrets; 5) Interference With Prospective Economic Advantage; 6) Unfair Competition; 7) Fraud and Deceit; 8) Slander Per Se; and 9) Breach of Fiduciary Duty

43.     Defendant has been unjustly enriched and NBRL is entitled to all recoverable damages in an amount to be proven at trial, but which are at least $10 million.

44.     As a further proximate result of Defendant's wrongful conduct, NBRL has been injured, irreparably and otherwise, and is threatened with additional and ongoing injuries.  Because NBRL's remedy at law is inadequate, NBRL seeks permanent injunctive relief.

45.     Defendant's misappropriation has been willful and malicious. Therefore, NBRL is entitled to an award of punitive or treble damages and attorneys' fees pursuant to Cal. Civ. Code § 3426.3(c) and 3426.4.

## FIFTH CLAIM FOR RELIEF

### (Tortious Interference With Prospective Economic Advantage Brought By NBRL)

46.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-45 of this Complaint as though fully set forth herein.

47.     NBRL and Defendant are in the same business of treating patients in the public sector for a variety of brain maladies using TMS.  They are also in the same business treating military personnel and veterans for PTSD and TBI.  NBRL and Defendant therefore have the same prospective patients in both the public and military sectors.  Obtaining patients in both sectors represents an obvious economic advantage to NBRL.

48.     Defendant is well aware of NBRL's business and prospective customers in both the public and military sectors as NBRL introduced Defendant to NBRL's business and prospective customers in both sectors.

49.     Defendant is competing against NBRL in both sectors improperly using the critical elements of NBRL's trade secret MeRT technology that Defendant obtained under the NDA.  Defendant has also made false statements to

13

military leaders that NBRL is comprised of Chinese spies, Chinese Mafia and Chinks in an effort to discredit NBRL and obtain military business for himself. All of this conduct is designed to disrupt NBRL's relationships with its potential and actual customers, has disrupted such relationships and therefore constitutes tortious interference with NBLR's prospective economic advantage.

50.    In the summer of 2015, a very wealthy general contractor in San Diego (whose name is not stated due to patient privacy concerns), was a patient of NBRL at its Del Mar Neuro Center facility where Defendant was the treating physician using NBRL's trade secret MeRT technology that NBRL disclosed to him under the NDA. On November 26, 2015, he passed away. In August, 2016, his family trust made a gift of $10,000,000 to the UC San Diego Foundation, specifically for the support of TMS research of Defendant. The funds were to be held as fully expendable funds for Defendant's immediate research needs. This gift was an economic opportunity that belonged to NBRL, which Defendant usurped for himself, which he was only able to do because he violated the NDA and stole the critical elements of NBRL's proprietary MeRT technology.

51.    Additionally, as alleged above, in May, 2017, Defendant's company PeakLogic signed a contract with Special Operations Command (SOCOM) within the military to investigate the treatment of Special Operations Forces to improve human performance using his prTMS treatments, which are based on the critical elements of MeRT technology that Defendant stole from NBRL. This was an economic opportunity that belonged to NBRL, which Defendant usurped for himself, which he was only able to do because he violated the NDA and stole NBRL's proprietary MeRT technology.

52.    NBRL has suffered damages as a result of Defendant's tortious interference with its prospective economic advantage in an amount to be proven at trial, but which is at least $10 million.

53.    Defendant's tortious interference was oppressive, fraudulent and malicious within the meaning of Cal. Civ. Code § 3294, warranting an award of punitive damages.

54.    NBRL is also entitled to a permanent injunction to prevent further tortious interference by Defendant.

## SIXTH CLAIM FOR RELIEF

### (Unfair Competition Under Cal. Bus. Prof. Code § 17200 Brought By NBRL)

55.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-54 of this Complaint as though fully set forth herein.

56.    Defendant's aforementioned conduct constitutes unlawful, unfair and fraudulent business acts and is therefore unfair competition within the meaning of Cal. Bus. Prof. Code. § 17200.

57.    NBRL has suffered damages as a result of Defendant's unfair competition in an amount to be proven at trial.

58.    Defendant's unfair competition was oppressive, fraudulent and malicious within the meaning of Cal. Civ. Code § 3294, warranting an award of punitive damages.

59.    NBRL is also entitled to a permanent injunction to prevent further unfair competition by Defendant.

## SEVENTH CLAIM FOR RELIEF

### (Fraud and Deceit Brought By NBRL and NBRL V)

60.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-59 of this Complaint as though fully set forth herein.

61.    On September 30, 2013, when Defendant signed the NDA, Defendant represented to NBRL that he was interested in exploring doing business together treating patients with brain maladies using NBRL's proprietary technology.  In

January, 2014, Defendant represented that he was in fact interested in doing business together treating patients with brain maladies using NBRL's proprietary technology.  Defendant also represented that he was acting on behalf of UCSD, and that UCSD was involved in the joint business contemplated by Defendant and NBRL, knowing that this would be very appealing to NBRL and would make NBRL more likely to enter into a joint business relationship.  As NBRL revealed its proprietary, trade secret technology to Defendant over the next year and a half, Defendant continued to represent that he was interested in doing business together with NBRL.  When NBRL V was formed in September, 2015, Defendant represented to NBRL and NBRL V's other two founders/members that he was interested in working through NBRL V to obtain business from the military treating veterans suffering from PTSD and TBI.

62.    On information and belief, in fact all of the material representations set forth above were false and Defendant knew they were false when he made them.  From the very beginning, Defendant intended on learning everything he could about NBRL's proprietary, trade secret MeRT technology so he could steal it and set up competing businesses using that technology in both the public and military sectors, which is exactly what he did.  Defendant also knew that UCSD was not involved with the business on which Defendant and NBRL were embarking together, but knew that this fact would make NBRL more interested in entering into a business relationship with Defendant.

63.    NBRL justifiably relied on Defendant's material misrepresentations and consequently disclosed its proprietary, trade secret MeRT technology in detail to Defendant, set up a treatment center  in San Diego at which he was the treating physician and introduced him to NBRL's key contacts in the military.  NBRL V justifiably relied on Defendant's material misrepresentations in setting up NBRL V to solicit business from the military jointly with Defendant to treat veterans suffering from PTSD and TBI.  Had NBRL and NBRL V known that Defendant's

misrepresentations were false, they would not have entered into business with him, and NBRL would not have disclosed its proprietary, trade secret MeRT technology to him.

64.    Defendant's misrepresentations constitute fraud and deceit.

65.    Plaintiffs have been damaged by Defendant's fraud and deceit in an amount to be proven at trial.

66.    Defendant's actions were oppressive, fraudulent and malicious within the meaning of Cal. Civ. Code § 3294, warranting an award of punitive damages.

67.    NBRL and NBRL V are also entitled to a permanent injunction to prevent further damage from occurring as a result of Defendant's fraudulent and deceitful actions.

### EIGTH CLAIM FOR RELIEF

### (Slander Per Se Under Cal. Civ. Code § 46 Brought By NBRL)

68.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1-67 of this Complaint as though fully set forth herein.

69.    On information and belief, Defendant has made racial epithets about NBRL and its founders numerous times over the last 3 years.  He stated many times to numerous people having connections with the military that NBRL is comprised of "Chinese spies" and "Chinese Mafia" because with the current tensions between the U.S. and China, particularly involving the theft of Intellectual Property, he knew that would make it much more difficult for NBRL to obtain business from the military.  On or about January 26th, 2017, Defendant made these statements to Greg Douquet, a retired United States Marine Corps Colonel that works as a Senior Fellow with the Atlantic Council's Millennium Leadership Program and a Federal Contracts Strategic Advisor.  On or about March 22, 2018, at an event at one of Defendant's clinics in Carmel, IN, and again on March 23, 2018, at an event at the Meridian Hills Country Club in Indianapolis, IN,

Defendant made these statements, which were overheard by Bob Sikorski, a veteran who owns a Service Disabled Veteran Owned Business, and Joe Charles, a friend of Ohio State Senator Frank Hoagland.  Between 2015 and 2018, employees of Defendant, including Diana Shapiro, Mike Murphy and Jeff Lindquist, personally observed Defendant make these racial epithets numerous times to various members of the military community and investors.  One such member to whom these statements were made is Admiral Harold Koenig in late 2015.   Also between 2015 and 2018, Defendant made these statements on numerous occasions to John Surmont, a retired Navy Seal who was an advocate for Defendant.  Further, at the end of 2015, Defendant made these same statements to Walter Kerpa, a retired member of Army Intelligence, when he made a trip to San Diego to visit with the Defendant.

70.    The people who heard the aforementioned racial epithets reasonably understood that Defendant were referring to NBRL and reasonably understood Defendant to be saying that NBRL was comprised of Chinese spies and Chinese Mafia.

71.    The aforesaid defamatory statements allegedly made by Defendant were and are false and were not privileged.  Defendant made said statements knowing the falsity thereof or without using reasonable care to determine the truth or falsity thereof.

72.    Defendant made the aforesaid defamatory statements with malice and with the intent to injure NBRL's good name and reputation and convince the military not to do business with NBRL, but rather to do business with Defendant, in that Defendant harbored ill-will toward NBRL.

73.    The aforesaid defamatory statements have damaged NBRL's reputation; such statements have a tendency to injure and have injured NBRL in its business in that NBRL has lost business from the military and is finding it much more difficult to get business from the military due to Defendant's defamatory

statements.  NBRL's future business prospects have also been harmed by said

defamatory statements.  All of the above contributes to NBRL's general and actual

damages, including exemplary and punitive damages, in an amount to be proven at

trial.

## NINTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty Brought By NBRL V)

74.      Plaintiff re-alleges and incorporates by reference the allegations of

Paragraphs 1-72 of this Complaint as though fully set forth herein.

75.      As one of three owners and founding members of NBRL V, founded

in September, 2015, Defendant had a fiduciary relationship with, and fiduciary

duty to, NBRL V and the other owners/founding members of NBRL V.  By virtue

of this special relationship, NBRL and NBRL V trusted that Defendant was going

to work together with them and only them to solicit business from the military to

treat veterans suffering from PTSD and TBI using NBRL's proprietary, trade

secret MeRT technology.

76.      In December, 2015, less than three months after the formation of

NBRL V, Defendant violated and abused the trust and confidence that NBRL V

and its other members had by breaking off all contact with NBRL and NBRL V

and competing against NBRL, with his own companies that he had previously

formed, in both the public and military sectors, using critical elements of NBRL's

MeRT technology and the military contacts he met through Plaintiffs.  As alleged

above, in May, 2017, Defendant's company PeakLogic signed a contract with

Special Operations Command ("SOCOM") within the military to investigate the

treatment of Special Operations Forces to improve human performance using

critical elements of MeRT technology that Defendant stole from NBRL which, as

noted above, Defendant calls prTMS.  This was an economic opportunity that

belonged to NBRL, which Defendant usurped for himself, which he was only able

Complaint For 1) Federal Unfair Competition (Lanham Act); 2) Copyright Infringement; 3) Breach of Contract; 4) Theft
Of Trade Secrets; 5) Interference With Prospective Economic Advantage; 6) Unfair Competition; 7) Fraud and Deceit; 8)
Slander Per Se; and 9) Breach of Fiduciary Duty

to do because he violated the NDA and stole critical elements of NBRL's proprietary, trade secret MeRT technology.  These actions by Defendant are a breach of his fiduciary duty to NBRL V and the other founders/members.

77.    NBRL V has been damaged by Defendant's breach of fiduciary duty and is entitled to a disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendant as a result of such actions. NBRL V is also entitled to its lost profits, all in an amount to be proven at trial.

78.    Defendant is entitled to a permanent injunction to prevent Defendant's breach of fiduciary duty from causing further damage to NBRL V.

79.    In doing the acts described in this cause of action, Defendant acted with oppression, fraud and malice within the meaning of Cal.Civ.Code § 3294, thereby entitling Plaintiff to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.    For a finding that Defendant is guilty of false representation in advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

2.    For a finding that Defendant has committed copyright infringement and that such infringement was willful;

3.    For a finding that Defendant breached the NDA;

4.    For a finding that Defendant stole NBRL's trade secrets.

5.    For a finding that Defendant tortiously interfered with NBRL's prospective economic advantage;

6.    For a finding that Defendant committed unfair competition.

7.    For a finding that Defendant is guilty of fraud and deceit;

8.    For a finding that Defendant committed slander per se;

9.    For a finding that Defendant breached his fiduciary duty;

20

Complaint For 1) Federal Unfair Competition (Lanham Act); 2) Copyright Infringement; 3) Breach of Contract; 4) Theft Of Trade Secrets; 5) Interference With Prospective Economic Advantage; 6) Unfair Competition; 7) Fraud and Deceit; 8) Slander Per Se; and 9) Breach of Fiduciary Duty

10.    For a finding that Defendant acted with oppression, malice and fraud and is therefore guilty of violating Cal.Civ.Code §3294.

11.    That NBRL be awarded damages for Defendant's violation of § 43(a) of the Lanham Act in an amount not less than $1 million.

12.    That NBRL be awarded damages for Defendant's copyright infringement;

13.    That NBRL be awarded damages for Defendant's breach of the NDA, in amount not less than $1 million;

14.    That NBRL be awarded damages for Defendant's theft of NBRL's trade secrets, in an amount not less than $10 million.

15.    That NBRL be awarded damages for Defendant's tortious interference with NBRL's prospective economic advantage, in an amount not less than $10 million;

16.    That NBRL be awarded damages for Defendant's unfair competition;

17.    That Plaintiffs be awarded damages for Defendant's fraud and deceit;

18.    That NBRL be awarded damages for Defendant's slander per se;

19.    That NBRL V be awarded damages for Defendant's breach of fiduciary duty;

20.    That Plaintiffs be awarded punitive damages.

21.    For permanent injunctive relief to prevent Defendant from further damaging Plaintiffs.

22.    That Defendant be ordered to pay to Plaintiffs the costs of this action and attorney's fees incurred in relation to this action, as permitted by law.

23.    That Plaintiff be awarded all such other and further relief as the Court deems just and proper.

DATED:  September 10, 2018        LAW OFFICES OF TODD B. SEROTA
                                  TODD B. SEROTA


                                  By _____/s/_____
                                          TODD B. SEROTA

                                  Attorneys for Plaintiffs The Newport Brain Research Laboratory, Inc. and NBRL V

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury on all issues in this action so triable.

DATED:  September 10, 2018            LAW OFFICES OF TODD B. SEROTA
                                      TODD B. SEROTA


                                      By _____/s/_____
                                         TODD B. SEROTA
                                      Attorneys for Plaintiffs The Newport Brain Research
                                      Laboratory, Inc. and NBRL V